# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

IEISHIA J. BLACKWELL,

     Plaintiff,

                                                 Case No.

v.

                                                 Hon. Robert J Jonker

OFFICER REGINALD GEE, Individually
and in his official capacities; OFFICER
JOSHUA ROSE; Individually and in
his official capacities; BENTON HARBOR
PUBLIC SAFETY DEPT, and its Director
DANIEL MCGINNIS JR., Individually and
in his official capacity; BERRIEN
COUNTY JAIL; BERRIEN COUNTY
SHERIFF'S DEPT., and SHERIFF L.
PAUL BAILEY, Individually and in his
official capacity; and any unknown,
yet to be discovered liable persons or
entities.

     Defendants.

_____

John R. Beason III, Esq.
The J.R. Beason Firm PLLC.
Attorney for the Plaintiff
(269) 213-1426
JRBeason3@TheJRBeasonFirm.com

(1)

## **PLAINTIFF'S COMPLAINT AND REQUEST FOR DAMAGES**

Plaintiff, IEISHIA BLACKWELL, through counsel, and brings this action for tort based constitutional violations, namely: violations of the equal protection and due process clauses substantiating willful neglect of duty, gross negligence, battery, false arrest, false imprisonment, torture, and intentional infliction of emotional distress against the Defendants Officer Reginald Gee, Officer Joshua Rose, the Benton Harbor Public Safety Department, the Berrien County Jail, Berrien County Sheriff's Department, in their individual and official capacities, alleges as follows.

(2)

## **INTRODUCTION**

This is a Civil Action asserting claims under federal and state law alleging claims for violations of equal protection, due process, disparate treatment, willful neglect of duty, gross negligence, assault and battery, false arrest, false imprisonment, torture, and intentional infliction of emotional distress in violation of U.S. Const. amend. XIV; U.S. Const. amend. V; MI Const. Art 1 §17; M.C.L. § 600.2959; M.C.L. § 750.81; M.C.L. § 750.349b; M.C.L. § 750.478;  M.C.L. § 750.85, and M.C.L. § 764.15.

Plaintiff requests a jury trial and seeks an award of compensatory and punitive damages, as well as reasonable attorney fees and cost pursuant to M.C.L.A. § 600.2911, M.C.L.A. § 600.2954, and 42 U.S.C.A. § 1983

(3)

## JURISDICTION AND VENUE

This court has jurisdiction over all causes of action set forth in this complaint pursuant to 28 U.S.C § 139, as the plaintiff and the Defendants reside in the County of Berrien, in the State of Michigan. The occurrence of the significant and relevant incidents giving rise to this complaint took place in Benton Harbor and St. Joseph, MI, County of Berrien, within the jurisdiction of this Court.

(4)

## THE PARTIES

Plaintiff is a citizen of the State of Michigan and resides in the City of Benton Harbor in the County of Berrien.

(5)

Defendant Mr. Reginald Gee is a citizen of the State of Michigan with the competency and capacity to sue and be sued. At the time of the alleged extreme

conduct, harassment, and false arrest, the Defendant was employed in Benton Harbor, MI (Berrien County) and currently retains domicile and a residence in Benton Harbor, MI (Berrien County). The Defendants Benton Harbor Public Safety Department and the Berrien County Sheriff's Department  are both Berrien County citizens as well as a corporate entities organized under the laws of Michigan and at all times spoken to in this complaint, the Benton Harbor Public Safety Department and the Berrien County Sheriff's Department maintained their departmental offices and or principal places of business in the County of Berrien Michigan.

## **FACTS GIVING RISE TO PLAINTIFF'S COMPLAINT**

(6)

In 2005, Ms. Ieishia Blackwell was the victim of police misconduct when drugs were planted in her home by a Benton Harbor police officer.  Ms. Blackwell acted as the whistle blower in what became a local judicial and law enforcement scandal, as two Benton Harbor Police officers were convicted in federal court and dozens of cases overturned as a result.  Since acting as a whistleblower some 15 years ago, Ms. Blackwell has suffered consistent mistreatment and harassment from members

of the Benton Harbor Police force.  The most recent and notable incidents leading to this complaint are addressed below.

(7)

On October 2nd, 2015, Ms. Ieisha Blackwell was wrongfully arrested and falsely imprisoned in the Berrien County Jail for four days due to an administrative mistake related to her lawfully registered firearm.  Weeks earlier, The Plaintiff's firearm was confiscated.  After complaining that it had been taken without cause, she was instructed by the Police Chief to retrieve it.  When she arrived on October 2nd, 2015, she was arrested by officers citing an erroneously entered arrest warrant for the very same lawfully registered firearm that she was directed to pick-up. Four days later, the Benton Harbor Police department corrected their error and released the Plaintiff.  This incident caused the Plaintiff to suffer severe emotional distress and anxiety attacks as a result of suffering police misconduct and a wrongful arrest by the same entity.

(8)

On July 31st of 2018, while driving to work, the Plaintiff received a call from her frantic children stating that their house was surrounded by police officers.  Before

arriving home, the Plaintiff called her mother to inform her of the situation. The Plaintiff's mother stated that she had just been followed by the Defendant, Officer Reginald Gee, in a black sedan and that she was going to meet her at her house. When the Plaintiff arrived at her home, she indeed found her house surrounded by five Benton Harbor Police cars and one unmarked police car.  At Ms. Blackwell's residence, Officers demanded to enter without a warrant.  Officer Gee arrived at the scene and stated that he saw the Plaintiff's son run into the house.  Due to the timing of the events, her mothers statements about Officer Gee's whereabouts, the children's statements, and her own prior knowledge, Ms. Blackwell knew that her son was not in the home, nor was it possible for Officer Gee to have seen him enter her residence.  Ms. Blackwell requested and pleaded with the officers to stop scaring her children and to leave the premises because a search of her home was unnecessary and unreasonable.  After a two hour standoff with multiple officers surrounding the home, the police chief was called and the Plaintiff consented to a search which confirmed that the Plaintiff's son was not in the house as she stated hours earlier.

(9)

On August 8th, 2018, Ms. Blackwell was seized without cause while driving between Broadway and Pipestone avenues in Benton Harbor, MI, by Officer Weber.   The Plaintiff agained called her mother in fear that she may be falsely accused.  Officer Weber requested her license, registration, and proof of insurance; all of which Ms, Blackwell provided.  A second patrol car arrived on the scene, but the officers never got out of their vehicle.  Ms. Blackwell was released.  No reason for her seizure was given.

(10)

On August 22nd, 2018, Ms. Blackwell and a family friend, Mr. Isaiah Bobo, were sitting and talking outside of her home.  Mr. Bobo left, and was quickly arrested by Officer Radosevich. Officer Radosevich questioned Mr. Bobo about who was in Ms. Blackwell's home and the whereabouts of her son.  Mr. Bobo responded that he had no information about who was present in the home and or the whereabouts of the Plaintiff's son.   Officer Radosevich released Mr. Bobo without further incident.  The next day, August 23rd, 2018, the Plaintiff went to the police station to file complaints against officers Weber and Radosevich, both of whom were consistently riding pass and sitting in front of her home.  Ms. Blackwell also made

multiple calls to the police chief and left messages about the unwarranted actions of his officers, but received no return calls or correspondence in return.

(11)

The Plaintiff suffered police misconduct approximately sixteen years ago when she had drugs planted in her home by a former Benton Harbor police officer.  Nine years later, she was wrongfully arrested and erroneously jailed for days due to the negligence of Benton Harbor Public Safety officers. A few years after that incident, the Plaintiff had her home surrounded and searched despite her objections and admissions of truth.  Since then, Ms. Blackwell has been the subject of consistent surveillance and unwarranted contact by Officer Reginald Gee and other officers of the Benton Harbor Police Department.  Ms. Blackwell has suffered mental anguish resulting in anxiety and panic attacks documented in her medical records.

(12)

Late in the evening on January 21st, 2019, Officer Gee knocked on the Plaintiff's door and stated that her son threw a bomb in the Benton Harbor High School library a year earlier in January of 2018.  Officer Gee proceeded to state that the Plaintiff should not get her son an attorney or bail him out of jail because he needs

to "learn his lesson."  Ms. Blackwell denied all of the accusations Officer Gee made about her son and called her mother to inform her of the shocking, intimidating statements Officer Gee made at her window.

(13)

The next month, in early February of 2019, Officer Gee again knocked on the Plaintiff's door and requested to speak with her son.  Through her bedroom window, the Plaintiff again detailed, as she had consistently stated repeatedly, that her son was not present and did not live at her home.

(14)

On February 22nd, 2019, the Plaintiff called the police chief and informed him of the harassment she was suffering from Officer Gee and other Benton Harbor police officers.  Police Chief McGinnis stated to the plaintiff that he had no knowledge of the contact, that he would speak with Officer Gee, and call her back later that day.

(15)

Police Chief McGinnis called the Plaintiff back six days later on February 28th, 2019 and stated that he had no record of Officer Gee coming to her home.  The

Chief did not speak to whether or not he spoke directly to Officer Gee or other officers about the Plaintiff's complaints or allegations.

(16)

On March 22nd, 2019, the Defendant, Officer Reginald Gee, knocked on the Plaintiff's door and asked her if she knew about trash across the street on Brunson Ave.  The Plaintiff informed Officer Gee that she had no knowledge about trash across the street.  Officer Gee then stated that there was a piece of mail with the Plaintiff's child's name on it.  The Plaintiff responded that maybe the wind blew it out of the trash and across the street because it had been cold and windy recently. The Plaintiff told Officer Gee that she would retrieve the piece of mail.  Ms. Blackwell was scared by the officer's unwarranted presence at her home and called her mother.  The Plaintiff's mother came, directed the plaintiff to stay in her room, and proceeded to speak with Officer Gee.

(17)

On May 10th, 2019, the Plaintiff was sitting in her driveway after returning home from work, when she was approached by Officer Rose of the Benton Harbor Police Department.   Officer Rose demanded that the Plaintiff get out of her car and

proceeded to arrest her for "littering."  The Plaintiff was confused and distraught, as she never received a ticket, citation, or any form of notice for littering.  Ms. Blackwell had littered anything.  Defendant Rose stated to Ms. Blackwell that she could not pay a civil citation on site, contrary to the Plaintiff's common knowledge of community policing policies.  The Plaintiff was placed in handcuffs, moved into a police car, and taken from her home to the Berrien County Jail.

(18)

While being registered and booked into the Berrien County Jail, the Sheriff working the in-take process suggested to Officer Rose that the Plaintiff could have paid the citation on site to avoid jail.  Defendant Rose gestured to the Sheriff to stop his discussion of the Plaintiff's due process rights.  The Berrien County Sheriff proceeded to ask the Plaintiff standard questions about her health.  Ms. Blackwell explained that she suffered from anxiety attacks and was taking medication.  The Berrien County sheriff took note of these facts and proceeded to take custody of the Plaintiff.  Ms. Blackwell was held her in Berrien County Jail for approximately three to six hours.

(19)

When the Plaintiff was released, she proceeded to file complaints against Officer Gee and Officer Rose for false information and false arrest.   On July 2nd, 2019, the Berrien County Prosecutor's Office's request for Nolle Prosequi was granted by Judge Sterling Shrock and the case was dismissed without prejudice.

(20)

In August of 2019, the Plaintiff made several requests for copies of her past complaints and the alleged littering citation.  The Plaintiff was not given copies of any of her past complaints against Benton Harbor Police Officers but she was given a copy of the alleged littering citation.  The citation is dated March 22nd, 2019, and is signed by Officer R. Gee.  The box indicating rather or not Officer Gee gave a copy of the alleged citation to the Plaintiff is not checked.

(21)

## COUNT I. DISPARATE TREATMENT: VIOLATIONS OF EQUAL PROTECTION &  DUE PROCESS

Plaintiff, realleges paragraphs 1-21.

(22)

The Defendants violated the Plaintiff's constitutional due process and equal protection rights under law when they arrested and jailed her for a civil infraction without providing notice, nor affording her the common due process administered to all similarly situated citizens.

(23)

No person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV.

(24)

"The Equal protection clause's command that no state shall deny to any person within its jurisdiction the equal protection of the laws [U.S.C.A. Const.Amend. 14] is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). "No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary

associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed."  MI CONST Art. 1, § 17 (West).  "Under the Fourteenth Amendment, due process requires that an individual deprived by government of protected liberty or property interest be accorded an opportunity to be heard at a meaningful time and in a meaningful manner." U.S.C.A. Const.Amend. 14. Harris v. Cty. of Calhoun, 127 F. Supp. 2d 871 (W.D. Mich. 2001).  "Due process requires the government to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." New Prod. Corp. v. Harbor Shores BHBT Land Dev., LLC, 331 Mich. App. 614, 953 N.W.2d 476 (2019), appeal denied, 953 N.W.2d 202 (Mich. 2021). "Substantive due process protects the individual from the exercise of power without any reasonable justification." Parrino v. Sebelius, 155 F. Supp. 3d 714 (W.D. Ky. 2015), aff'd sub nom. Parrino v. Price, 869 F.3d 392 (6th Cir. 2017). The "procedural due process" element of a due process challenge provides that, when government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. U.S.C.A. Const.Amend. 14. People v. Haynes, 256 Mich. App. 341, 664 N.W.2d 225 (2003).

(25)

"Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." U.S.C.A. Const.Amends. 5, 14. <u>United Student Aid Funds, Inc. v. Espinosa</u>, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010).

(26)

Each defendant violated Ms. Blackwell's constitutional right to due process when they participated in her unlawful seizure, offensive touching, forced movement, and unlawful imprisonment without providing her reasonably calculated notice to apprise her of the pendency of the arrest or the opportunity to provide objections. By arresting, transporting, and jailing Ms. Ieishia Blackwell for the accusation of littering without presenting her with notice or a hearing prior to the unlawful arrest and six hour imprisonment, the Defendants violated the Plaintiff's unalienable human and constitutional right to equal protection and due process under the law.

(27)

**COUNT II. WILFUL NEGLECT OF DUTY**

Plaintiff, realleges paragraphs 1-27.

(28)

The Defendants wilfully neglected their public duties to the community and the Plaintiff when they intentionally and knowingly forcibly transported and held the Plaintiff in a punitive facility without just cause, legal right, and or due process of law.

(29)

"When any duty is or shall be enjoined by law upon any public officer, or upon any person holding any public trust or employment, every willful neglect to perform such duty, where no special provision shall have been made for the punishment of such delinquency, constitutes a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00. Mich. Comp. Laws Ann. § 750.478 (West).

(30)

The "Statute setting forth the offense of willful neglect of duty by a public officer makes it a violation of law for a public officer to willfully neglect to perform a legal duty, and it squarely concerns omissions of duty; stated otherwise, the statute criminally punishes a public officer for failing to perform any act that the duties of

the office require of the officer, nonfeasance." <u>People v. Waterstone</u>, 296 Mich. App. 121, 818 N.W.2d 432 (2012).  "For purposes of the statute setting forth the offense of willful neglect of duty by a public officer, the term "willful" encompasses a knowledge and purpose to commit a wrong, i.e., a bad purpose, while committing an intentional act of nonfeasance. M.C.L.A. § 750.478. <u>People v. Waterstone</u>, 296 Mich. App. 121, 818 N.W.2d 432 (2012). The duties of a "public officer" must be more than those of a mere agent or servant, and he must be endowed by law with power and authority to use his own discretion. <u>People v. Freedland</u>, 308 Mich. 449, 14 N.W.2d 62 (1944).

(31)

Officer's Gee, Rose, and the Berrien County Sheriff's department intake officers were acting as public officers, more than mere agents or servants, and were endowed by law with power and authority to use their own discretion when they knowingly, willfully, and purposefully failed to perform their legal duty to provide due process to the Plaintiff by arresting her for a civil infraction that carries no jail time, without notice or an opportunity to defend herself.  The Defendants violated their duty to Ms. Blackwell, first, by failing to provide notice of an alleged littering citation, and secondly by seizing, forcibly transporting, and holding the plaintiff against her will for a littering citation the Defendants knew the Plaintiff never

received.   The Benton Harbor Public Safety and Berrien County Sheriff officers violated the public's trust and their oaths of public employment when they used an intentional act of nonfeasance to bully, intimidate, and inflict emotional trauma Ms. Ieishia Blackwell.

(32)

## COUNT III. GROSS NEGLIGENCE

Plaintiff, realleges paragraphs 1-32.

(33)

As supposed public servants and community service entities, i.e., Sheriffs, Public Safety officers, and the Berrien County Jail, the Defendants owed Ms. Blackwell and the community at large, a duty of care and they breached that duty of care when they forcibly arrested and held her in jail for a civil infraction she was not given notice for, thereby causing her extreme mental anguish and loss of enjoyment of life.

(34)

A gross negligence claim must establish (1) that the Defendant "owed a duty of care to the Plaintiff", (2) that the Defendant "breached that duty", and (3) that "the breach proximately caused his/hers damages." *See Pathways, Inc. v. Hammons,*

113 S.W.3d 85, 88 (Ky.2003) (citing *Mullins v. Commonwealth Life Ins. Co.,* 839 S.W.2d 245 (Ky.1992)).   The Plaintiff "must demonstrate "an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed that the act was malicious or willful." *Phelps v. Louisville Water Co.,* 103 S.W .3d 46, 51 (Ky.2003). McIntosh v. Data RX Mgmt., Inc., No. 5:13-CV-140-TBR, 2014 WL 774609, at *5 (W.D. Ky. Feb. 25, 2014).

(35)

The Sixth Circuit has acknowledged that "Government employees can be held liable for gross negligence under Michigan tort law." *Wells v. City of Dearborn Heights,* 538 Fed.Appx. 631, 641 (6th Cir.2013) (citing Mich. Comp. Laws § 691.1407(2)(c)). Acklin v. City of Inkster, 93 F. Supp. 3d 778, 800 (E.D. Mich. 2015).   Michigan does allow gross negligence claims based on allegations that also form the basis of a claim for intentional use of excessive force. Jackson v. Lubelan, 657 F. App'x 497, 502 (6th Cir. 2016).   The Court has previously found that, drawing all reasonable inferences in favor of the Plaintiff, a Defendant could be held liable under a failure to intervene theory. Acklin v. City of Inkster, 93 F. Supp. 3d 778, 800 (E.D. Mich. 2015).

(36)

The Defendants acted in gross negligence when they knowingly, willfully, and purposefully failed to perform the legal duty of care, i.e, to provide the equal protection and due process under the law owed to the Plaintiff, when they arrested and imprisoned Ms. Blackwell for a littering citation that was never presented to her.  The Defendants acted with wanton disregard for the Plaintiff's rights and with malice when they seized, arrested, bullied, and inflicted emotional trauma on Ms. Ieishia Blackwell by arresting and imprisoning her for an offense that carries no jail time.  "A person who violates this part, if the amount of the litter is less than 1 cubic foot in volume, is responsible for a state civil infraction and is subject to a civil fine of not more than $800.00." Mich. Comp. Laws Ann. § 324.8905a (West).

(37)

The Defendant's knowingly, purposefully, and with wanton disregard for the Plaintiff's human and constitutional rights, breached the duty of care owed to Ms. Ieishia Blackwell when they arrested, transported, and imprisoned her in the Berrien County Jail without just cause or legal right, causing the Plaintiff to suffer severe emotional distress, anxiety  attacks, loss of sleep, headaches, depression, and mental anguish.

(38)

## COUNT IV. ASSAULT & BATTERY

Plaintiff, realleges paragraphs 1-38.

(39)

The Defendants committed assault and battery when they unlawfully attempted and achieved an intentional, unconsented, offensive, and harmful touching of the Plaintiffs person by seizing, forcibly transporting, and holding the Plaintiff in the Berrien County Jail.

(40)

"Assault" is defined as either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery. People v. Meissner, 294 Mich. App. 438, 812 N.W.2d 37 (2011). "Battery" is an intentional, unconsented and harmful or offensive touching of the person of another. People v. Meissner, 294 Mich. App. 438, 812 N.W.2d 37 (2011).

(41)

"The offense of assault requires proof that the defendant made either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." People v. Henry (Aft. Rem.), 305 Mich. App. 127, 854 N.W.2d 114 (2014). A "battery" is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely

connected with the person. <u>People v. Henry (Aft. Rem.)</u>, 305 Mich. App. 127, 854 N.W.2d 114 (2014).

(42)

Defendant's Officer Rose and the Benton Harbor Public Safety Department committed assault and battery when they attempted and fulfilled the harmful and unconsented touching of grabbing the plaintiff's wrist, placing her in handcuffs, and forcing her into the backseat of a police car as an intentional act of disregard and violation her dignity and rights at law.  Defendant Berrien County Jail, committed assault and battery when they willingly and intentionally received and continued to hold Ms. Blackwell against her will in their punitive correctional facility.

(43)

**COUNT V. FALSE ARREST**

Plaintiff, realleges paragraphs 1-38.

(44)

The Defendants committed a false arrest when they seized and forcibly transported the Plaintiff to a correctional facility for an alleged civil infraction that carried no jail time and for which she was never notified.

(45)

A false arrest is simply an "illegal or unjustified arrest" by law enforcement. *See Lewis v. Farmer Jack Division, Inc.*, 327 N.W.2d 893, 894 (Mich. 1982).

(46)

"A peace officer, without a warrant, may arrest a person in any of the following situations: (a) A felony, misdemeanor, or ordinance violation is committed in the peace officer's presence. (b) The person has committed a felony although not in the peace officer's presence. (c) A felony in fact has been committed and the peace officer has reasonable cause to believe the person committed it. (d) The peace officer has reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days or a felony has been committed and reasonable cause to believe the person committed it. (e) The peace officer has received positive information by written, telegraphic, teletypic, telephonic, radio, electronic, or other authoritative source that another peace officer or a court holds a warrant for the person's arrest. (f) The peace officer has received positive information broadcast from a recognized police or other governmental radio station, or teletype, that affords the peace officer reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days or a felony has been committed and reasonable cause to believe the person committed it. (g) The peace officer has

reasonable cause to believe the person is an escaped convict, has violated a condition of parole from a prison, has violated a condition of a pardon granted by the executive, or has violated 1 or more conditions of a conditional release order or probation order imposed by a court of this state, another state, Indian tribe, or United States territory." Mich. Comp. Laws Ann. § 764.15 (West).

(47)

"Where claims of false arrest and false imprisonment are based upon an allegedly improper arrest, Plaintiffs must establish that the arrest was illegal because it was not based upon probable cause." Diamond v. City of Kalamazoo, No. 1:15-CV-696, 2017 WL 3972046, at *2 (W.D. Mich. June 30, 2017), report and recommendation adopted, No. 1:15-CV-696, 2017 WL 3868807 (W.D. Mich. Sept. 5, 2017), aff'd sub nom. Lang v. City of Kalamazoo, 744 F. App'x 282 (6th Cir. 2018).

(48)

Under Michigan law, probable cause "is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the accused is guilty of the offense charged." *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 362 (Mich Ct. App. 2003). Probable cause "is a commonsense concept dealing with practical

considerations of everyday life that must be viewed from the perspective of reasonable and prudent persons, not legal technicians." *Id.* at 362-63. Where "the facts are undisputed, the determination whether probable cause exists is a question of law for the court to decide." *Id.* at 362. Diamond v. City of Kalamazoo, No. 1:15-CV-696, 2017 WL 3972046, at *3 (W.D. Mich. June 30, 2017), report and recommendation adopted, No. 1:15-CV-696, 2017 WL 3868807 (W.D. Mich. Sept. 5, 2017), aff'd sub nom. Lang v. City of Kalamazoo, 744 F. App'x 282 (6th Cir. 2018).

(49)

The Defendants committed an illegal and unjustified arrest when they seized and forcibly transported Ms. Ieishia Blackwell to the Berrien County Jail for allegedly failing to pay a littering citation she did not receive.  Probable cause, as common sense concept and as a matter of law, did not exist at the time of arrest because a reasonable and prudent person would see no cause for issuing an infraction from the mere presence of a piece of mail on the ground, the littering statute amounts to a civil infraction that does not warrant an arrest, and a civil infraction, without being committed in the presence of a peace officer, cannot be grounds for an arrest pursuant to law, i.e., § 764.15, M.C.L.A.

(50)

## COUNT VI. FALSE IMPRISONMENT

Plaintiff, realleges paragraphs 1-50.

(51)

The Defendants committed false imprisonment when they forcibly held the Plaintiff in a corrections facility without legal justification.

(52)

"The essence of a claim of false imprisonment is that the imprisonment is false, i.e., without right or authority to do so." Moore v. City of Detroit, 252 Mich. App. 384, 652 N.W.2d 688 (2002).  "The general concept of false imprisonment as an unlawful restraint of an individual's personal liberty is broader than, but includes, a false arrest involving law enforcement." Moore v. City of Detroit, 252 Mich. App. 384, 652 N.W.2d 688 (2002).

(53)

The elements of false imprisonment are (1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement. Moore v. City of Detroit, 252 Mich. App. 384, 652 N.W.2d 688 (2002).

(54)

The Defendants are liable for False Imprisonment because they committed a malicious act with the intention of confining Ms. Blackwell, when they arrested her without probable cause, transported her to the Berrien County Jail, and turned her over to the Berrien County Sheriff's Department.  The act of directing the Berrien County Sheriff officer to register and take custody of the Plaintiff as an inmate and alleged criminal resulted in her forced confinement in jail for several hours.  While Ms. Blackwewll was being held in the county jail, she was acutely aware of her unjust confinement and interpreted the incident as a direct and intentional attack on her dignity and human rights.

(55)

## COUNT VII.  TORTURE & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff, realleges paragraphs 1-55.

(56)

The Defendants, when they intentionally and knowingly seized, transported, and held Ms. Blackwell in punitive confinement without just cause or legal right, acted with the intention to inflict cruel mental pain and suffering upon the Plaintiff in retribution for her history of whistleblowing, complaints, and rebuffs of unwanted, unwarranted police interactions.  The Defendants acted under the color of the law

and went beyond all bounds of decency in a civilized society by accusing, seizing, and imprisoning an innocent person for an alleged offense that carries no possible jail time, and doing so as an act of intimidation.

(57)

"A person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture and is guilty of a felony punishable by imprisonment for life or any term of years. Mich. Comp. Laws Ann. § 750.85 (West).

(58)

To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. Hayley v. Allstate Ins. Co., 262 Mich. App. 571, 686 N.W.2d 273 (2004).  "The conduct complained of in a suit alleging intentional infliction of emotional distress must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Hayley v. Allstate Ins. Co., 262 Mich. App. 571, 686 N.W.2d 273 (2004).  "Sufficient proof must be adduced of intentional infliction

28

and something much more than simply aggravation must be shown to make out a case of intentional infliction of emotional distress under Michigan law; this requires plaintiff to show more than hurt feelings, but seeking and receiving medical treatment is not a condition precedent to satisfying the element of extreme emotional distress. Gilliam v. Ordiway, 147 F. Supp. 3d 664 (E.D. Mich. 2015).

(59)

The Defendant's engaged in extreme and outrageous conduct when they colluded to arrest and imprison the Plaintiff without probable cause or legal justification of any sort.  The Defendant's violated the Plaintiff's rights with intent to punish her and inflict mental anguish; their forced confinement of the Plaintiff in the Berrien County Jail for three to six hours, after over a decade of harassment and multiple wrongful arrest, caused Ms. Blackwell to endure severe mental anguish, anxiety, trauma, and emotional distress.

(60)

The Defendants actions of intentionally using their public positions of power over the Plaintiff to unilaterally and arbitrarily punish her by kidnapping and holding her in a facility designed for punitive use while she was acutely aware of the unconstitutional circumstances leading to her presence there amounts to the intentional infliction of severe mental anguish, i.e., torture.

(61)

The Plaintiff's emotional distress is evidenced in the drastic worsening of her anxiety attacks and depression symptoms.   The Plaintiff has been placed on medication and continues to be treated for the mental anguish and emotional distress inflicted upon her by the Defendants.   Ms. Blackwell lives in fear of further intentional acts to harm her and continues to suffer mental anguish in relation to this incident giving rise to suit.   As such, the Plaintiff is in the process of relocating to the State of Ohio, so as to remove herself and her family from the jurisdiction of the Defendants, essentially fleeing this district in pursuit of her human and constitutional rights elsewhere.

(62)

## DAMAGES

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.A. § 1983 (West).   A "jury may be permitted to assess punitive damages in an action under § 1983 when

a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally-protected rights of others and such threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness. 42 U.S.C.A. § 1983. Smith v. Wade, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).

(63)

"When section 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to the principles derived from the common law of torts." Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986).  Damages in section 1983 cases are designed to provide compensation for the injury caused by the violation; compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation and mental anguish and suffering. Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986).

(64)

**RELIEF REQUESTED**

Plaintiff, realleges paragraphs 1-64.

(65)

As a result of the constitutional and state law violations suffered by the Plaintiff and caused by the Defendants, Ms. Ieishia Blackwell has suffered mental anguish, humiliation, outrage, anxiety attacks, depression,   headaches, fatigue, and emotional distress.

(66)

**Wherefore**, the Plaintiff respectfully requests that this Honorable Court enter a Judgment in her favor against Defendants for the following relief:

I.   That $300,000.00 be paid in compensatory and hedonic damages to the Plaintiff to compensate her for the mental and physical anguish, loss of enjoyment, and depression she has and will continue to endure;

II.   That $500,000.00 be paid exemplary damages to the Plaintiff for the Defendants' violations of public trust and offensive affronts to the conscience of the community;

III.   That $50,000.00 be paid as an award of interest, costs, and reasonable attorney fees;

IV.   That a public apology be issued from the Defendants to the Plaintiff and the community for their violations of the public's trust;

V.   Any other compensatory, exemplary, or equitable relief that this Honorable Court deems appropriate at the commencement of trial.

**THE J.R. BEASON FIRM, PLLC.**
Attorney John R. Beason III
for Plaintiff, Ms. Ieishia J. Blackwell

Dated: December 5, 2021                    By: /s/ John R. Beason III, Esq.
                                           The J.R. Beason Firm PLLC.
                                           D.C. Bar No.: 1721583
                                           IBA Bar No.: 1522438
                                           853 McAlister St.
                                           Benton Harbor, MI 49022
                                           (269) 213-1426
                                           JRBeason3@TheJRBeasonFirm.com

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

IEISHIA J. BLACKWELL,

     Plaintiff,                              Case No.

v.                                          Hon. Robert J Jonker

OFFICER REGINALD GEE, Individually
and in his official capacities; OFFICER
JOSHUA ROSE; Individually and in
his official capacities; BENTON HARBOR
PUBLIC SAFETY DEPT., and its Director
DANIEL MCGINNIS JR., Individually and
in his official capacity; BERRIEN
COUNTY JAIL; BERRIEN COUNTY
SHERIFF'S DEPT., and SHERIFF L.
PAUL BAILEY, Individually and in his
official capacity; and any unknown, yet
to be discovered liable persons or entities.

     Defendants.

---

## JURY DEMAND

     To the extent that a jury trial is allowed with regard to any of the issues as set forth above, Plaintiff mercifully demands such.

**THE J.R. BEASON FIRM, PLLC.**
Attorney John R. Beason III
for Plaintiff, Ms. Ieishia J. Blackwell


Dated: December 5, 2021

By: /s/ John R. Beason III, Esq.
Attorney John R. Beason III
D.C. Bar No.: 1721583
IBA Bar No.: 1522438
853 McAlister St.
Benton Harbor, MI 49022
(269) 213-1426
JRBeason3@TheJRBeasonFirm.com

35